UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>JAMES A. DONNELLY,<br><br>    Defendant. | Case No. 24-PO-00011-LDA |

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### I.    PROCEDURAL HISTORY

Defendant James Donnelly is charged with entering a closed area of a national wildlife refuge in violation of 50 C.F.R. § 26.21(a) and 16 U.S.C. § 688dd(c)(f)(2). On June 23, 2024, Patrick James, a U.S. Fish and Wildlife Service ("FWS") Senior Law Enforcement Officer, issued Defendant a United States District Court Violation Notice for Trespass on a National Wildlife Refuge (ECF No. 2, Doc. 2, Violation Notice No. 9511867). Defendant made his initial appearance on August 16, 2024 and entered a plea of not guilty. Accordingly, a bench trial was held, starting on September 23, 2024, and concluding on October 7, 2024.

At trial, Maureen Durkin, FWS Wildlife Biologist, Casey Manera, who was a FWS Shorebird Crew Lead at the time of the incident, Grace Carew, a FWS Shorebird Technician, and FWS Senior Officer Patrick James testified for the Government. Defendant offered his own testimony. Based on the record, including the trial exhibits and testimony, and the following proposed findings of fact and conclusions of law, the Court should find the Defendant guilty.

### II.    LEGAL BACKGROUND

The Property Clause of the U.S. Constitution states that "Congress shall have the Power to make all needful Rules and Regulations respecting the Territory or other Property belonging to the

United States." U.S. Const. art. IV, § 3 cl. 2. The Supreme Court has held that the government's extensive power to regulate federal lands is "without limitations." *See Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (internal citations omitted); *see also United States v. Bd. of Cnty. Comm'rs of Otero*, 843 F.3d 1208, 1213 (10th Cir. 2016) (holding that congressional power over federal lands is "plenary"). Among other things, "the Property Clause gives Congress the power over the public lands 'to control their occupancy and use, to protect them from trespass and injury and to prescribe the conditions upon which others may obtain rights in them . . . .' " *Kleppe*, 426 U.S. at 540 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405 (1917)).

Congress brought all of the Nation's wildlife refuges under the umbrella of a unified system with the passage of the National Wildlife Refuge System Administration Act of 1966 ("the Act"), and granted the FWS the authority to regulate lands within the National Wildlife Refuge System (the "Refuge System"). *See* 16 U.S.C. §§ 668dd-668ee. One of the express purposes of the Act is the conservation of "fish, wildlife, . . . all lands, waters and interests therein administered by the Secretary as wildlife refuges." 16 U.S.C. § 668dd(a)(1). The Act authorizes the Secretary of the Interior to issue regulations to carry out the purposes of the Act and authorizes the FWS to impose certain restrictions on access to lands in the Refuge System. 16 U.S.C. §§ 668dd(b)(5).

### III. FINDINGS OF FACT

Moonstone Beach is located on the south coast of Rhode Island in South Kingstown. *See* Trustom Pond National Wildlife Refuge, https://www.fws.gov/refuge/trustom-pond/about-us (last visited Nov. 12, 2024). The Beach is part of the Trustom Pond Refuge, a federally owned parcel of land that is managed as part of the Refuge System. (ECF No. 12, 9/23/24 Tr. 6:15-22, 55:21-25 (Durkin)). The established purposes for the Trustom Pond Refuge are ". . . for use as an inviolate sanctuary, or for any other management purpose, for migratory birds," and for "(1) incidental fish

and wildlife oriented recreational development; (2) protection of natural resources; and (3) conservation of endangered or threatened species." Trustom Pond National Wildlife Refuge, https://www.fws.gov/refuge/trustom-pond/about-us (last visited Nov. 12, 2024); *see also* The Endangered Species Act of 1973, 16 U.S.C. § 1531-44; The Migratory Bird Conservation Act of 1929, 16 U.S.C. § 715 et seq.

Consistent with these purposes, the federally deeded portion of Moonstone Beach is closed to the public from April 1 through September 15. (9/23/24 Tr. 9:2-9 (Durkin)). No public use is allowed during that time in order to protect Piping Plovers, small ground nesting shorebirds, which are particularly sensitive to disturbance and are conservation dependent. (9/23/24 Tr. 7:7-8:10, 9:14-10:2 (Durkin)); *see also* Govt. Ex. 2, Photo #2 ("We manage the beach for protection of the Threatened Piping Plover . . .")).

The boundaries of the enclosed area at Moonstone Beach are placed at the mean high-water line, based on a 19-year average. (9/23/24 Tr. 13:22-14:8 (Durkin)). To determine the boundaries, land surveyors mark the mean high-water line on an annual basis, by placing wooden stakes into the ground, while FWS personnel follow closely behind and replace the stakes with metal posts. (9/23/24 Tr. 14:9-15:21 (Durkin)). The posts delineate the north-south and east-west boundaries of the federally protected area. (9/23/24 Tr. 48:19-49:7 (Durkin)). The FWS then puts signs on many of the metal posts to indicate that the area is closed to public use from April 1 through September 15 to protect endangered birds, their nests, and their eggs. (9/23/24 Tr. 15:1-16 (Durkin); *see also* Def. Ex. B, Photo Nos. 2 & 6)).

On June 23, 2024, Ms. Manera and Ms. Carew, members of a FWS team, lawfully entered the closed portion of the Moonstone Beach area of the Trustom Pond Refuge to conduct shorebird monitoring. (9/23/24 Tr. 58:12-59:14 (Manera)). At that time, both Ms. Manera and Ms. Carew

3

observed a person, who was later determined by Ms. Manera to be the Defendant, on the prohibited area of the refuge landward of the posts delineating the closed off area. (9/23/24 Tr. 63:24-64:4 (Manera); 93:19-24 (Carew)). Ms. Manera testified that when she spoke with Mr. Donnelly on June 23, 2024, he was about ten feet landward of the refuge boundary markers walking west along the beach. (9/23/24 Tr. 66:12-20 (Manera); 99:20-100:19 (Carew)).

Mr. Donnelly testified that he walked on Moonstone Beach approximately five to six times a week since 2020, \that he "always stayed outside the posts[,]" and timed his walks so he did them during low tide. (ECF No. 13, 10/7/24 Tr. 9:1-6, 10:11-20, 32:21-24 (Donnelly)). However, he also testified that on June 23, 2024, he parked and walked on the right-of-way down to Moonstone Beach, which had signs indicating that the area was closed to the public and that endangered birds and their nests are protected under state and federal laws. (10/7/24 Tr. 15:22-24; 30:22-23, Def. Ex. B, Photo Nos. 2 & 6). He testified that he walked weaving in and out of the posts as the waves came up. (10/7/24 Tr. 36:14-25 (Donnelly)). He admitted to walking inside the posts in the area of the refuge. (10/7/24 Tr. 20:10-20; 36:23-25 (Donnelly)). Finally, he admitted to standing in the closed area located inside a post when Ms. Manera spoke to him on June 23, 2024. (10/7/24 Tr. 20:10-20; 37:1-6 (Donnelly)).

IV. ARGUMENT

During trial, Defendant raised two challenges. First, he argued that he did not violate 50 C.F.R. § 26.21(a). Second, he seemed to assert that, even if he stepped into the enclosed area, the FWS does not have the authority to restrict his access to the refuge because his rights are protected under Rhode Island law. (10/7/24 Tr. 87:10-89:1 (Donnelly)). Both arguments fail.

**A. The Defendant's Actions Constituted Trespass.**

Defendant is charged with failing to comply with a refuge regulation, 50 C.F.R. § 26.21(a),

4

which provides in pertinent part that except as specifically authorized: "No person shall trespass, including but not limited to entering, occupying, using, or being upon, any national wildlife refuge . . . . " A violation of this regulation is a petty offense. 16 U.S.C. § 668 dd(c)(f)(2) provides that the penalty for one "who otherwise violates or fails to comply with any of the provisions of this Act (including a regulation issued under this Act) shall be fined under Title 18 or imprisoned not more than 180 days, or both." The government proceeds only under (f)(2) of the penalty provision. Accordingly, there is no intent or knowledge requirement under the provisions of (f)(2) or the regulation charged here.

Therefore, in order to find Defendant guilty, the Court must find, beyond a reasonable doubt, that: (1) the Trustom Pond Refuge is federal property; (2) that Moonstone Beach was a part of the Trustom Pond Refuge; (3) that portions of Moonstone Beach were closed to public access on June 23, 2024; (4) that the Defendant entered, occupied, used, or was upon a closed portion of Moonstone Beach; and (5) that he was not authorized to be on the closed portion of the Beach. The Government has satisfied each element of the offense charged beyond a reasonable doubt.

The government proved beyond a reasonable doubt that the Moonstone Beach area of the Trustom Pond Refuge is federally owned and managed by the FWS. Further, public access to Moonstone Beach was restricted on June 23, 2024 to protect Piping Plovers. The Refuge is closed to the public unless the Service opens it in accordance with the Refuge Act and its implementing regulations. 50 C.F.R § 25.21. The Moonstone Beach portion of the Refuge, in particular, is closed to all public access from April 1 through September 15 to protect the nesting, chick rearing, and migration staging habits of certain migratory birds. Defendant impeded that mission when he entered a closed portion of Moonstone Beach and was physically on the Trustom Pond Refuge, in violation of 50 C.F.R. § 26.21(a).

Defendant seems to argue that the boundaries of the Beach that were closed to the public were unclear because there were no ropes in between the metal posts parallel to the water, the metal posts were not in a straight line, and it seemed that there were fewer signs than in the past. (10/7/24 Tr. 12:18-22; 35:10-18 (Donnelly)). He also testified that he thought the FWS relaxed their restrictions "because the law had changed." (10/7/24 Tr. 12:24-13:12, 35:10-15). Defendant's own testimony, however, clearly showed familiarity with the closed area. (Tr. 10/7/2024 9:1-10; 32:21-24). Defendant testified that he walked Moonstone Beach several times a week, was familiar with the signs at the right-of-way restricting access to the area due to protection of the endangered species, and that he generally walked along the posts in the water to avoid walking on the closed portion of the Beach, and he sometimes weaved in and out between the poles. (Tr. 10/7/24 at 9:1-10, 10:3-22; 16:13-25; 32:21-34:24). Therefore, the evidence introduced at trial, including from Defendant's own testimony and the testimony of Ms. Manera and Ms. Carew, establish beyond a reasonable doubt that the Defendant entered, occupied, used, or was upon a closed portion of Moonstone Beach without authorization. The Court should find him guilty as a result.

**B. Federal Law Preempts the Rhode Island Shoreline Access Law.**

Defendant also appears to also assert that the Rhode Island Shoreline Access Law, Sen. Bill 2023-S0417 (amending R.I. Gen. Laws, Ch. 46-23), gave him the right to enter the closed portion of the Refuge. Defendant's belief that he had a right to recreate on the Refuge portion of Moonstone Beach is mistaken. Under the Property Clause and the Supremacy clause of the U.S. Constitution, federal law and regulations supersede conflicting state laws regarding the protection and use of federal lands.

The Property Clause grants the federal government and federal agencies broad authority to regulate federally owned land, including uses of adjacent property which affect federal land. The

Supremacy Clause prevents state law from interfering with the federal government's authority to regulate uses of federal land. Under the Supremacy Clause, Federal Law is "the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . *any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" U.S. Constitution, Art. VI, cl. 2. (emphasis added); *see also Pub. Int. Legal Found., v. Bellows*, 92 F.4th 36, 51 (1st Cir. 2024) ("Under the Clause, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.") (internal citations and quotations omitted)).

The Rhode Island Shoreline Access Law does not impede the ability of the FWS to enforce federal law and regulations on federally owned refuge lands for the protection of federal land and wildlife refuge purposes. As such, the Rhode Island Shoreline Access Law does not take precedence over federal law applicable to the protection of wildlife refuges. *See Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1168 (9th Cir. 2022); *see also Kleppe*, 426 U.S. at 538 ("[W]hen Congress . . . acts [under the Property Clause], the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause."). The FWS is empowered to protect endangered wildlife through the Endangered Species Act, 16 U.S.C. §§ 1531-1544, and national wildlife refuges pursuant to the Act, 16 U.S.C. § 668dd(a)(1). These Acts, and any implementing regulations, are controlling over Rhode Island's Shoreline Access Law. Accordingly, the Defendant in this case had no authority under state law to enter the closed off area of the Trustom Pond Refuge.

V. **CONCLUSION**

The Court should find Defendant John Donnelly guilty of 50 C.F.R. § 26.21(a), entering a national wildlife refuge without authority.

Dated: November 20, 2024                    UNITED STATES OF AMERICA,
                                            By its attorneys,

                                            ZACHARY A. CUNHA
                                            United States Attorney


                                            */s/ Leslie J. Kane*
                                            LESLIE J. KANE
                                            Assistant U.S. Attorney
                                            One Financial Plaza, 17th Floor
                                            Providence, RI 02903
                                            leslie.kane@usdoj.gov
                                            401.709.5059

**CERTIFICATE OF SERVICE**

      I hereby certify that, on November 20, 2024, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 304. I also emailed a copy of the foregoing document to Mr. Donnelly.

*/s/ Leslie J. Kane*
LESLIE J. KANE
Assistant U.S. Attorney